IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JONATHAN NUÑEZ-TORRES,

Defendant.

CRIMINAL NO.  07-277 (JAG)

## REPORT AND RECOMMENDATION

## INTRODUCTION

Defendant Jonathan Núñez-Torres ("Núñez") filed a "Motion for Suppression of Evidence", through former court appointed counsel, claiming the warrantless search of his vehicle and person and seizure in this case, resulting from a routine traffic stop and based on the plain view doctrine, were unreasonable and in breach of the Fourth Amendment to the U.S. Constitution.  (**Docket No. 14**).  The government duly opposed the motion to suppress claiming defendant was not entitled to a hearing in relation to his request.  (**Docket No. 19**).

Defendant then filed a "Motion Amending Motion for Suppression of Evidence filed by the Court by the Defendant on August 23, 2007", through newly court appointed counsel, contending, in essence, there is no evidence to support a claim of reasonable suspicion beyond that which led to the initial stop for defendant's failure to wear his seat belt.  Defendant claims there is no reasonable suspicion to justify the police officer's forcing of defendant out of the car and searching inside the vehicle which uncovered a pistol inside the vehicle.  Accordingly, defendant avers the officer allegedly performed an enhanced detention and an illegal search.

As such, defendant requests all evidence seized during the alleged illegal detention and the ensuing search (including the pistol, crack cocaine, mask, pair of pants and sleeveless shirt), as well as any statements given in connection therewith, be suppressed. (**Docket No. 30**).

The government responded to defendant's Amended Motion to Suppress arguing defendant's general and unfounded assertions of police misconduct fail to make a showing that a substantial claim is present.  The government contends defendant voluntarily gave two statements to authorities admitting ownership of the firearm and its value.  In addition, the government avers defendant is not entitled to a suppression hearing. (**Docket No. 35**).

On December 7, 2007, the suppression hearing was held before the undersigned in which the testimonies of Puerto Rico Police Officer Jonathan Hernández-Cuevas ("PRPO Hernández") and Special Agent George I. Núñez ("SA Núñez") were heard on behalf of the government.  Defendant Núñez testified for the defense after being advised by the Court, and his counsel, as to the possible risks of defendant testifying.  (Docket No. 39).

The Court ordered the translation of the exhibits and granted the government ten (10) days to submit the translations. (**Docket No. 39**).  On December 20, 2007,  the translations were filed by the government. (**Docket No. 42**).  On January 11, 2008, the transcript of the suppression hearing was requested by the Court (**Docket No. 43)** and it was filed on February 12, 2008 **(Docket No. 44**).

United States of America v. Jonathan Nuñez-Torres
Criminal No. 07-277 (JAG)
Report and Recommendation
Page 3

## FACTUAL BACKGROUND

**Testimony of PRPO Jonathan Hernández-Cuevas:**

The government presented the testimony of PRPO Hernández which may be summarized as follows:

PRPO Hernández has been a police officer for 4 ½ years and he is currently assigned to the Vega Alta Special Operations Division. On June 17, 2007 at 2:20 am, PRPO Hernández was making preventive rounds in the area of Cataño in a marked Ford Explorer patrol vehicle along with PRPO Sonia Mercado. The normal headlights and the blue lights of the patrol car were on. PRPO Hernández was driving the patrol car in Las Nereidas Street, La Puntilla Sector in Cataño when he noticed a blue Ford Taurus vehicle in which the driver was not wearing his seatbelt. The vehicle was a four door car with the windows rolled down with one passenger. The Ford Taurus passed the patrol car on the right hand side and, then, passed in front of the patrol car. The patrol car followed up the Ford Taurus and proceeded to stop the same with the siren in a well lighted area. PRPO Hernández stepped out of the patrol car and approached the driver of the Ford Taurus and requested the driver's license and vehicle's registration. The driver, later identified as defendant Núñez, handed the documents to PRPO Hernández who verified the same. PRPO Hernández then walked in front of the Ford Taurus to verify on the windshield whether the number in the tag ("marbete") was the same as the number in the vehicle's registration. When PRPO Hernández was verifying the tag number with the aid of a flashlight (to avoid his own shadow from shielding his view) on the passenger side of the

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 4

vehicle, he observed a nickel plated magazine with a black handle of a gun on defendant's waist at the right side.  Then, PRPO Hernández approached defendant on the driver's side and asked him to get off the vehicle.  Defendant complied and PRPO Hernández seized defendant's weapon for the officers' safety and requested the license for the firearm.  Defendant indicated he did not have a license for the weapon.   PRPO Hernández read defendant his rights and arrested him.  After providing the warnings and rights to defendant, PRPO Hernández patted down defendant, for the safety of those present, and found $64.00 in cash in different denominations in his front left pocket.   In addition, a Ziplock type plastic bag with pressure seal containing several cylinder containers with black caps containing inside a granulated powder believed to be cocaine, within the officer's experience, was found in defendant's back right pocket along with a plastic square box containing 6 pink pills with numbers and letters.  Defendant was arrested and placed in the patrol car.

Then, PRPO Hernández checked the seized weapon and found that it was loaded with a 30 rounds capacity magazine which contained 19 rounds in the magazine and one in the chamber ready to be fired.  The vehicle was seized and transferred, along with defendant, to the Vega Baja Special Operations Division.

PRPO Hernández explained that, within his experience, it is not normal for a weapon's magazine to protrude like that for that type of pistol.  The magazine in this case was larger than normal because it was high capacity.  (Exhibits 3 and 4).

Once at the Vega Alta Special Operations Division, PRPO Hernández interviewed defendant and he voluntarily and freely stated he had knowledge the weapon seized had been altered for automatic function and he had paid $2,000.00 for it.  In addition, PRPO Hernández verified the seized weapon which turned out to be stolen.  PRPO Hernández prepared a receipt for the seized property, for the money occupied and he issued a traffic ticket to defendant for failure to use the seatbelt which defendant signed (Exhibit 2).

Afterwards, PRPO Hernández totally filled out the PPR 128 (vehicle inventory), which was signed by defendant.  A black mask used in robberies (Balaclava style), one  set of black pants and one black shirt were found in the trunk of the vehicle during the inventory search.

Later, PRPO Hernández went with defendant to the Drug Division in Bayamón where Agent Colón performed a field test of the seized substances, in defendant's presence, which tested positive to cocaine.

PRPO Hernández indicated during his testimony that he adopted as true and correct the sworn statement on June 17, 2007 related to this case. As stated in the sworn statement, PRPO Hernández read the Miranda Rights to defendant.  See Exhibit 1.

On cross examination, PRPO Hernández stated he does not recall whether he called for back up when the Ford Taurus was seen.  PRPO Hernández testified he does not know whether defendant was speeding at the time because he did not have a radar in the patrol car.  PRPO Hernández admitted he was not following defendant; defendant's vehicle was not stolen; and there was no reason to believe defendant was armed before observing the weapon.  In addition,

United States of America v. Jonathan Nuñez-Torres
Criminal No. 07-277 (JAG)
Report and Recommendation
Page 6

PRPO Hernández testified there was no reason to believe defendant had drugs. PRPO Hernández indicated it is standard procedure to verify the tag number with the vehicle's registration due to the high amount of tags which are stolen. PRPO Hernández was asked whether it would be the proper procedure to remain at the passenger window, upon verifying the tag and allegedly observing the weapon without removing the eyes from the weapon, rather than walking back towards the driver, and PRPO Hernández stated he walked in front of the vehicle without removing his eyes from defendant and the weapon. PRPO Hernández testified the front hood of the Ford Taurus is about 3 to 4 feet in length and, as he walked in front of the same, defendant had his hands on the wheel and he could see defendant's hands. PRPOs Piazza and Santiago showed for back up after defendant was under arrest.

**Testimony of SA Núñez:**

The government presented the testimony of SA Núñez which may be summarized as follows:

SA Núñez has been working for the FBI for over 1 year. On July 24, 2007, he was in contact with defendant Núñez Torres because he participated in an interview of defendant. SA Núñez is aware defendant was read his rights and warnings and was provided with the same in writing in the Spanish language, even though defendant stated he understood English. Exhibit 6 is a copy of the Miranda rights form which was read to defendant. See Exhibit 6. Defendant was provided with his rights both verbally and in writing. SA Núñez observed defendant signing the form. After the rights were read to defendant and he waived the same,

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 7

defendant indicated he wanted to make some statements.  FBI SAs Derrick Ferina and Celinés

Núñez were also present.  Defendant stated he paid $2,000.00 for the weapon.  When asked

by SA Celinés Núñez why he spent so much money, defendant indicated the weapon was

altered to shoot fully automatic as a machine gun and you pay more for a machine gun than

for a semi-automatic weapon.

**Testimony of defendant Núñez**:

The defense presented the testimony of defendant Núñez which may be summarized as

follows[1]:

On June 17, 2007 at 2:20 am, defendant Núñez was driving on the road he was

stopped.  Defendant observed the patrol car, and yielded to the patrol car because it had the

right of way.  He proceeded on said road and saw another patrol car further back.  Thus, a

patrol car was in front of defendant's vehicle and another patrol car was behind defendant's

vehicle.  Thus, defendant's vehicle was "sandwiched" between to police patrol vehicles.  The

front patrol car stopped and 4 officers came out, the rear patrol car ordered defendant's vehicle

to stop and 3 officers came out of the rear patrol car.  Defendant lowered his window once he

stopped his vehicle after being ordered to do so.  PRPO Hernández approached defendant's

vehicle and requested his driver's license and the vehicle's registration.  Defendant promptly

handed the documents which PRPO Hernández took and told him to step out of the car.

Defendant refused to step out of his car at that time and asked PRPO Hernández why he had

---

[1] Defendant Núñez testified after being advised by the Court, and his counsel, as to the possible risks of defendant
testifying.

to get out of the car if he had done nothing wrong.  Then, another officer (PRPO Piazza) told defendant "[b]ecause he told you to get out.  Get out of the vehicle."  PRPO Piazza was the driver of the police patrol car which was in front of defendant's vehicle.  Defendant did not get out of his vehicle and he observed PRPO Hernández walking in front of his Ford Taurus to the passenger side and looked at the tag ("marbete").  PRPO Piazza asked defendant to get out of the car again and PRPO Hernández walked back to the driver's side.  PRPO Piazza stated: "look, get out of the car now, or I'm going to pull you out through the window."  Defendant stepped out of the car and he was told by PRPO Hernández to step in front of the Ford Taurus vehicle, and to remove the content of his pockets and place it on top of the hood.  Defendant complied and removed $64.00 in cash and a small plastic box.  While defendant was being patted down by PRPO Hernández, PRPO Piazza opened the driver's door of the Ford Taurus, bent over, searched the vehicle and removed a weapon from underneath the driver's seat. Then, a female voice (believed to be the voice of PRPO Sonia Mercado) was heard telling defendant "I thought that you said you didn't have anything" and struck defendant in the back of his head.  Defendant was then arrested and placed in handcuffs.  PRPO Hernández took him to the patrol car he was driving, sat him in front on the passenger side and placed the seatbelt on him.  PRPO Mercado and another officer sat in the back seat.  PRPO Piazza got into the Ford Taurus.   The officers found the weapon and a small plastic pill box.  No drugs were found.

United States of America v. Jonathan Nuñez-Torres
Criminal No. 07-277 (JAG)
Report and Recommendation
Page 9

Once at the police headquarters, PRPO Hernández took defendant to a room and asked him whether there was something else in the car or a hidden stash.  Defendant told PRPO Hernández there was nothing else and no hidden compartment.  About 10 minutes later, PRPO Piazza walked in and said "Oh, so you didn't have anything, huh?  And what is this?" and PRPO Hernández then said "Why didn't you speak clearly to me?"  and "It was in the trunk" while he was carrying a small bag.  Drugs were found in the trunk of his vehicle.

On cross examination, defendant admitted the Ford Taurus was not his property and that it belonged to Milton, a family friend.  Defendant stated he was borrowing the car and he was heading to a friend's house.  Defendant conceded that a weapon was found and that drugs were also found in his vehicle.  Defendant admitted the only difference between his testimony and that of PRPO Hernández is as to where the weapon and drugs were found.  PRPO Hernández says the weapon was found in defendant's waist and defendant says it was found underneath the driver's seat.  Defendant admitted he was not wearing his seatbelt and that he was properly issued a traffic ticket.  Defendant stated the windows of the Ford Taurus are tinted. Defendant stated he was not speeding, was not driving drunk and was not wearing the driver's seatbelt.  Defendant stated no crack was found on his back pocket.  Defendant testified he admitted to the officers the weapon was fully automatic.  Defendant indicated he knew the weapon was fully automatic because, when he bought the same, he was shown how to use it. Defendant admitted the rights and warnings were read to him at the police station but no rights were given to him at the scene.

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 10

Defendant made the following admissions on the stand: a ski mask was found in his car's trunk; he did not have the seatbelt on; he received a traffic ticket; a weapon was found in the car; the weapon was fully automatic; crack cocaine was found in the trunk of his car; black pants were found in the trunk of his car; when asked he admitted the weapon was fully automatic and he paid $2,000.00; and the only disagreement is where the seized evidence was found.

Defendant recognized Exhibit 6 (warning of rights) as the document he signed and testified he understood his rights. Defendant signed the document because he understood his rights.   After signing Exhibit 6 and waiving his rights, defendant admitted he stated to the officers he bought the weapon for $2,000.00 and that it was fully automatic.

On re-direct examination, defendant indicated he never carried the weapon in his waistband while driving because he is fat and, if he would wear the weapon where PRPO Hernández said he had it, it would be too uncomfortable because it would press against his waistband.  Moreover, the weapon had a bullet in the chamber and defendant was afraid to put it in his waistband because it would be dangerous because it could fire on its own.

## LEGAL DISCUSSION

### I.        Investigatory Stop based on Reasonable Suspicion.

Defendant Núñez claims the stop of his vehicle was unconstitutional and there is no evidence to support a claim of reasonable suspicion beyond that which led to the initial stop for defendant's failure to wear his seatbelt.

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 11

An investigative stop, also known as a Terry stop, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), occurs when a police officer, acting on reasonable and articulable suspicion of criminal activity, briefly detains an individual to confirm or dispel his suspicion." Id. at 6, 88 S.Ct. 1868 (citing United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996)).

With regards to investigative stops, the Court must determine "not whether the police had probable cause to act, but instead whether the actions taken were reasonable under the circumstances." Id. The Court must first conclude whether the officer's action was justified at its inception. If the action is justified, the Court must then ask whether the action taken was reasonably related in scope to the circumstances which justified the interference. Id. To satisfy the first prong, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." United States v. Young, 105 F.3d 1, 7 (1st Cir. 1997)  (citing United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994)). To fulfill the second prong, the Court must examine the totality of the circumstances. See United States v. Walker, 924 F.2d 1, 4 (1st Cir. 1991); see also United States Acosta-Colón, 157 F.3d 9, 14 (1st Cir. 1998).

Based on the abovementioned case law, we conclude the PRPOs had reasonable suspicion to conduct an investigatory stop of Núñez' vehicle.  Accordingly, the investigatory stop was legal.  We explain.

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 12

Defendant Núñez has failed to offer any credible proof to contest the validity of the traffic stop.   The uncontested evidence shows defendant Núñez was not wearing his seat belt at the time his vehicle was stopped.  This was demonstrated by PRPO Hernández' Sworn Statement (Exhibit 1); PRPO Hernández' testimony at the suppression hearing and by a photocopy of the traffic ticket which was issued to Núñez on June 17, 2007 for failure to wear his seatbelt which was duly signed by defendant (Exhibit 2).  In fact, the government's evidence was corroborated by defendant's own admission on the witness stand that he was not wearing his seat belt at the time his vehicle was stopped while he was driving the same.

In view of the foregoing, it is undisputed defendant Núñez made a traffic violation by driving his vehicle without wearing his seat belt.   Accordingly, given the totality of the circumstances surrounding the initial investigatory stop of defendant as above summarized, we conclude the PRPOs had sufficient reasonable suspicion to make the initial stop of defendant's vehicle on June 17, 2007.

## II.    Warrantless Arrest.

A warrantless arrest is constitutionally valid if, at moment arrest is made, officers have probable cause to make it, that is, if at that moment facts and circumstances within their knowledge and of which they had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense. United States v. Ayres,  725 F.2d 806 (1st Cir. 1984); United States v. Young, 105 F.3d 1, 6 (1st

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 13

Cir. 1997) (same).  Whether there is probable cause for a warrantless arrest is determined under an objective standard, not by inquiry into officers' presumed motives.  *Id.*

Probable cause "is a practical, nontechnical conception" offering an acceptable compromise between competing societal interests in protecting citizens on the one hand from abusive interferences with privacy and unfounded charges of crime and on the other hand in recognizing the necessity to afford 'fair leeway for enforcing the law in the community's protection.'" Brinegar v. United States, 338  U.S. 160, 176, 69 S.Ct. 1302, 1311 (1949).

A warrantless arrest requires probable cause, the existence of which must be determined in light of the information that law enforcement officials possessed at the time of the arrest. *See* United States v. Diallo, 29 F.3d 23, 25 (1st Cir. 1994).  To establish probable cause, the government "need not present the quantum of proof necessary to convict." United States v. Uricoechea-Casallas, 946 F.2d 162, 165 (1st Cir.1991); United States v. Meade, 110 F.3d 190, 193 (1st Cir. 1997).

The inquiry into probable cause focuses on what the officer knew at the time of the arrest, United States v. Brown, 169 F.3d 89, 91 (1st Cir. 1999), and should evaluate the totality of the circumstances. United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000). "[P]robable cause is a common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Meade, 110 F.3d at 198 n. 11; United States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006).

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 14

After evaluating the testimonies of PRPO Hernández, SA Núñez and defendant Núñez, including their responsiveness and their demeanor on the stand, and the documentary evidence presented at the evidentiary hearing, this Magistrate Judge finds, pursuant to the preponderance of the evidence and considering the totality of the circumstances, the account of PRPO Hernández to be credible and accords little weight to defendant's self-serving testimony under these circumstances.[2]

Applying the above case law to this case, we conclude defendant Núñez' arrest after the investigatory stop was lawful and based on probable cause.   Pursuant to the testimony of PRPO Hernández, on June 17, 2007 at 2:20 am, he was making preventive rounds in the area of Cataño in a marked Ford Explorer patrol vehicle along with PRPO Sonia Mercado.  PRPO Hernández was driving in Las Nereidas Street, La Puntilla Sector in Cataño when he noticed a Ford Taurus vehicle in which the driver was not wearing his seatbelt.   The vehicle was a four door car with the windows rolled down with one passenger.  The Ford Taurus passed the patrol car on the right hand side and, then, passed in front of the patrol car.  The patrol car followed up the Ford Taurus and proceeded to stop the same with the siren in a well lighted area.  PRPO Hernández stepped out of the patrol car and approached the driver of the Ford Taurus and requested the driver's license and vehicle's registration.  The driver, later identified as defendant Núñez, handed the documents to PRPO Hernández and he verified the same.   PRPO

---

[2] The findings of the court after a hearing on a pretrial motion to suppress are binding unless they are clearly erroneous. United States v. de Jesús-Ríos, 990 F.2d 672, 677 (1st Cir. 1993). United States v. Hernández-Rodríguez, 443 F.3d 138. (1st Cir. 2006) (credibility determinations in a report and recommendation should not be rejected by the Court without hearing the evidence examined by the Magistrate Judge).

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 15

Hernández then walked in front of the Ford Taurus to verify on the windshield whether the number in the tag ("marbete") was the same than the number in the vehicle's registration. When PRPO Hernández was verifying the tag number, he observed at plain view in defendant's waist, at the right side, a nickel plated magazine with a black handle of a gun.  Then, PRPO Hernández approached defendant and asked him to get off the vehicle.  Defendant complied and PRPO Hernández seized defendant's weapon for the officers' safety and requested the license for the firearm.  Defendant indicated he did not have a license and PRPO Hernández read defendant his rights and arrested him.  After providing the warnings and rights to defendant, PRPO Hernández patted down defendant, for the safety of those present, and found $64.00 in cash in different denominations in his front left pocket.  In defendant's back right pocket, a Ziplock type plastic bag with pressure seal containing several cylinder containers with black caps containing inside a granulated powder believed to be cocaine was found, in addition to a plastic square box containing inside 6 pink pills with numbers and letters.  Defendant was arrested and placed in the patrol car.

We note that, even if we were going to credit defendant Núñez' version of the events, our conclusion would be the same because in essence his account of the events is the same as that of PRPO Hernández except for the location where the seized evidence was found. Defendant Núñez admitted a ski mask was found in his car's trunk; he did not have the seatbelt on; he received a traffic ticket; a weapon was found in the car; the weapon was fully automatic; crack cocaine was found in the trunk of his car; black pants were found in the trunk of his car;

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 16

and when asked he admitted the weapon was fully automatic and he paid $2,000.00.  Thus, the only disagreement between PRPO Hernández' testimony and that of the defendant, by his own admissions, is where the seized weapons and drugs were found.  In other words, PRPO Hernández testified the weapon and drugs were found in defendant's person and defendant says these items were found in his car.  Nonetheless, both PRPO Hernández and defendant coincide that, at the time defendant's vehicle was stopped, he was not wearing the seatbelt and a weapon and illegal drugs were found.

In view of the foregoing, the decision to place defendant Núñez under arrest and take him to the Vega Baja Special Operations Division was objectively reasonable because, under the circumstances, the officers had probable cause inasmuch defendant was in possession on a fully automatic loaded weapon without a license which was found at plain view[3] and in possession of illegal controlled substances.  Thus, under these circumstances, there was probable cause for defendant Núñez' warrantless arrest and for the seizure of the weapon and drugs and no basis for the suppression of the evidence.

## III. Warrantless Search of the Vehicle.

Defendant claims the seizure, which included defendant being unreasonably forced out of his car and the ensuing search of the vehicle, which uncovered the pistol under the driver's

---

[3] The "plain view doctrine," validates a seizure where "(1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a 'lawful right of access to the object itself.' " *See* United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004) (citation omitted), *cert. denied*, 544 U.S. 936 (2005).  *See also*  United States v. Jones, 187 F.3d 210 (1st Cir. 1999).  From an examination of the testimonies presented at the hearing, all elements for a plain view seizure have been met.

United States of America v. Jonathan Nuñez-Torres
Criminal No. 07-277 (JAG)
Report and Recommendation
Page 17

seat, pursuant to defendant's testimony, was an illegal search and seizure without reasonable suspicion.

In the instant case, as previously explained, defendant was observed by PRPO Hernández driving without his seat belt. Thus, the PRPOs had reasonable suspicion to stop the vehicle. Once the vehicle was stopped, PRPO Hernández observed at plain view that defendant was in possession of a weapon without the proper license. Defendant was arrested, drugs were found in his person and the vehicle was seized. At that time, the officers had probable cause to believe that the vehicle contained contraband. *See* United States v. Maguire, 918 F. 2d 254, 260 (1st Cir. 1990) (though the bags were in the trunk and not in the passenger compartment of the car, there was reasonable cause for the police to believe the two bags contained implicating evidence of the bank robbery; such evidence would be contraband).

"The mobility of automobiles and the attendant need to prevent loss of evidence undergirds" an exception to the warrant requirement. United States v. López, 380 F.3d 538, 543 (1st Cir. 2004). "A warrantless search of an automobile will be upheld if officers have probable cause to believe that the vehicle contains contraband." *Id.*, citing United States v. Ross, 456 U.S. 798, 808, 102 S.Ct. 2157 (1982) (internal quotations omitted).

In the case at bar, the search conformed to legal standards under the "automobile exception" to search warrants and was necessary to prevent the loss of evidence, especially when, as in this case, the officers initially observed defendant in possession of an illegal loaded fully automatic weapon and controlled substances.

In addition, in <u>Ross</u>, 456 U.S. at 799-800, the Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle that is as thorough as a magistrate could authorize by warrant.  Thus, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*. at 825.

Furthermore, the search of the vehicle was also justified under <u>New York v. Belton</u>, 453 U.S. 454, 457, 460, 101 S.Ct. 2860, 2862- 2864 (1981). Under <u>Belton</u>, when a police officer makes a lawful custodial arrest of the occupant of an automobile, the officer may, "as a contemporaneous incident of that arrest," search the car's passenger compartment and any containers found within it. *Id*. at 460-61 & n. 4. The "passenger compartment" has been interpreted to mean those areas reachable without exiting the vehicle and without dismantling door panels or other parts of the car. *See* Wayne R. LaFave & Jerold H. Israel, <u>Criminal Procedure</u> § 3.7 at 277 (1984). The <u>Belton</u> doctrine has thus been extended to allow warrantless searches of the rear section of a station wagon and the trunk area of a hatchback, when these areas are accessible from inside the vehicle, as in this case. <u>United States v. Pino</u>, 855 F.2d 357, 364 (6th Cir. 1988) (station wagon); <u>United States v. Russell</u>, 670 F.2d 323, 327 (D.C.Cir. 1982) (hatchback).

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 19

The vehicle in this case was lawfully stopped as previously explained.  Thus, under the rationale of <u>Ross</u> and of <u>Belton</u>, after the legal stop, the PRPOs were justified in searching the vehicle at the scene.  Accordingly, there was probable cause to search the vehicle.[4]

## IV.    Search of Defendant's Person.

Defendant also challenges the search of his person when he was asked to empty his pockets and he was padded down.

The vehicle in this case was lawfully stopped and the PRPOs searched defendant for the safety of everyone, as testified by PRPO Hernández.  Defendant was found in possession of $64.00 in cash in different denominations in his front left pocket.  In addition, a Ziplock type plastic bag with pressure seal containing several cylinder containers with black caps containing inside a granulated powder believed to be cocaine was found in defendant's back right pocket along with a plastic square box containing inside 6 pink pills with numbers and letters. A field test was done of the substances which were seized which tested positive to cocaine.

Under the totality of the circumstances, the search of defendant was justified for the safety of the officers and of defendant.  For instance, the officer's concern for his own safety is of paramount importance. <u>United States v. Walker</u>, 924 F.2d 1, 4 (1st Cir. 1991); <u>United States</u>

---

[4] We find there is no need to discuss in detail the inventory search performed of defendant's vehicle at the police headquarters, in his presence and after the vehicle was impounded, because defendant's motion to suppress fails to challenge the inventory search per se.

v. Brown, 858 F.Supp. 297, 302 (D. Puerto Rico 1994).  Moreover, at the time defendant was padded down he had already been observed in the illegal possession of a fully automatic weapon.

Hence, given the totality of the circumstances of this case at the time of the lawful arrest, probable cause existed to search defendant Núñez' person.

## V.  Defendant's Statements.

Defendant, without more, requests the statements he made to the officers be suppressed.

SA Núñez' uncontested testimony shows he participated of defendant's interview on July 24, 2007.  SA Núñez testified defendant was read his rights and warnings and was provided with the same in writing in the Spanish language, even though defendant stated he understood English.  See Exhibit 6.  SA Núñez observed defendant signing the form.  After the rights were read to defendant and he waived the same, defendant indicated he wanted to make some statements.  FBI SAs Ferina and Celinés Núñez were also present.  Defendant stated he had paid $2,000.00 for the weapon.  When asked by SA Celinés Núñez why he spent so much money, defendant indicated the weapon was altered to shoot fully automatic as a machine gun and you pay more for a machine gun than for a semi-automatic weapon.

Thus, in view of SA Núñez' unrebutted testimony it is uncontested defendant was provided with his legal rights and warnings and he waived the same before making any statements to the officers.  In fact, defendant recognized during his testimony that Exhibit 6 (warning of rights) was the document he signed and testified he understood his rights.  After

United States of America v. Jonathan Nuñez-Torres
Criminal No. 07-277 (JAG)
Report and Recommendation
Page 21

signing Exhibit 6 and waiving his rights, defendant voluntarily admitted to the officers ownership

of the weapon (which was bought by him for $2,000.00) and that it was fully automatic.

The testimony of SA Núñez was corroborated by defendant's own admissions during his

testimony at the suppression hearing when he recognized Exhibit 6 (warning of rights) as the

document he signed and testified he understood his rights. After signing Exhibit 6 and waiving

his rights, defendant testified he stated to the officers he bought the weapon for $2,000.00 and

that it was fully automatic. See Exhibit 6.

Finally, it should be noted that defendant has no asserted any threat or coercion by the

officers at the time he made the statements to them.

In view of the foregoing, the statements made by defendant Núñez were voluntary made

after he was provided with the legal warnings and rights and he had voluntarily waived the

same.

## CONCLUSION

Based on the witnesses' testimony at the suppression hearing, including the testimony

of PRPO Hernández, SA Núñez and defendant, and having assessed their credibility and taking

into account the documentary evidence also presented, it is determined that, pursuant to the

preponderance of the evidence and considering the totality of the circumstances, there was

reasonable suspicion for the initial stop of defendant's vehicle, there was probable cause for

defendant's arrest and search of his vehicle and person, and thus consonant with its

United States of America v. Jonathan Nuñez-Torres
Criminal No.  07-277 (JAG)
Report and Recommendation
Page 22

admissibility under the above findings and applicable law.   It is further found the statements

provided by defendant were voluntary and free of any coercion, threats or inducement.

In view of the foregoing, it is recommended that defendant Núñez' Motion to Suppress

(**Docket No. 14**) and the Amended Motion to Suppress  (**Docket No. 30**) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation.

Failure to file same within the specified time waives the right to appeal this order.  Henley

Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792

F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d

985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role

reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial

hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 13th day of February of 2008.

**s/CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**